The first case before us this morning is United States v. Hatley, 237046. And counsel, when you are ready, we are ready. Thank you. Good morning. May it please the Court. My name is Jamie Johnson. I'm an assistant federal public defender, and I represent Boyd-Hatley. I would like to start with the first issue that we raised, which is the issue of Indian status. This issue is entirely controlled by this Court's recent opinion in United States v.  In this case, as in Harper, the government had to prove that the defendant was Indian, and in both cases, the government failed to produce the actual tribal records that would have established the defendant's Indian status, and instead had a custodian write a letter describing the contents of those records, and then also called that custodian as a witness to vouch for the letter and its contents. As in Harper, that was error. When do they have to, is there any time component of Indian status? Yes. So as we explained in our briefing, the statute requires that the crime be committed by an Indian, and therefore the status that is relevant is the defendant's status at the time that the offense is committed. This is consistent with this Court's reasoning in the Drury case, and it is also, has been the express holding of the en banc Ninth Circuit in United States v. Zepeda. The time component is really what saves this statute from being a purely racial test. If all that the government has to do is find an individual who has some Indian blood, which is the first prong of the test, and then the government can later down the road proclaim this person to be an Indian, thereby satisfying the second prong of the test, really what it means is that anyone with Indian blood can become an Indian and be prosecuted by the federal court. And that does not appear to be what is envisioned by the statute, and it is one of the issues that the Ninth Circuit pointed out in Zepeda, is that a holding that a person can become an Indian after the fact and then be prosecuted for a crime violates public policy provisions regarding notice and invites gamesmanship among the parties. Counsel, can I challenge you on your proposition that Harper controls the outcome here? Yes. So, Harper, as you noted, was the same type of verification letter from a different tribe, and so let's say I spot you that the Harper decision impacts Government Exhibit 50, and that we were to say that that exhibit should not have been admitted into evidence for all the reasons that Harper says, but why here isn't there harmless error? Because unlike Harper, there was additional evidence of Indian status, such as Government Report pleading that was not challenged, it was objected to, admitted, but not challenged on appeal. And then, of course, you have Mr. Hatley's testimony agreeing that he is both of Indian blood and a member of the tribe. So why couldn't the jury take all of that and make reasonable inferences that he was, in fact, Indian status? Judge Federico, I think for the same reasons that I was just explaining to Judge McHugh, that information that you just cited to, the document, the state court document that was heavily redacted, said that Mr. Hatley was, at the time that that document was created, which was three years after the events, that he was an enrolled member of the Cherokee Nation in 2020, when the accident happened in 2017. Mr. Hatley himself testified some five years after the accident and said, yes, I'm an enrolled member of the Cherokee Nation, made no reference to and did not explain his status earlier. So really, the only thing that the jury would have had to go off of was pure speculation. But this is not a sufficiency challenge. And so all we really have to, or the government would have to establish, that the admission of this testimony did not substantially sway the jury. And there really wasn't anything in the record other than this testimony establishing that he was an Indian at the time that the offense was committed. Well, he filed a motion to dismiss the state court proceedings. And the Oklahoma Court of Criminal Appeals has explicitly held that in order for you to be an Indian for purposes of the major crime act that puts you in federal court, you have to be an Indian at the time of the offense. So the fact that he filed that motion to dismiss in Oklahoma and the motion was granted, doesn't that establish its harmless error because it had to be because he was an Indian at the time of the offense, so it wouldn't have been dismissed? No, Your Honor. So none of that information about what this motion was or what it was accomplishing was before the jury. The document itself is heavily redacted. It contains only three lines of information plus a signature. It says the defendant, now comes Lloyd Hatley, the defendant is alleged to have caused a car accident. This location is within the boundaries of the Chickasaw Nation. The defendant is a citizen of the Cherokee Nation. It doesn't say anything about McGirt. It doesn't say this is a motion to dismiss the state court case for lack of jurisdiction. And this heavily redacted document is all that the jury had. It was all the information that was presented at trial. So counsel, what do you think would be sufficient? Do we need the defendant to say, I was a member of the tribe at the time of the accident? We need a statement that says that. Is that your argument? Certainly, Judge, that would be sufficient. There are other options available. Obviously, the defendant does not testify in every case. In this case, he did. And the government could have asked. You know, they did ask, are you a member by blood of the Cherokee Nation? And they could have said, was that also true in 2017? They just didn't ask that question. But there are other options. If the defendant doesn't testify, as was explained in Harper, the tribal records themselves, there's a CDIB card, there's the tribal enrollment documents. The documents that were summarized in this letter instead of presented to trial can be presented to show the defendant's Indian status. Well, you could also ask him when he was on the stand, were you a member of the tribe at the time of the offense, right? Yes. And it's that, certainly, they could have done that, and if he had answered yes, that would have been sufficient, and we would not be raising this as an issue. If the panel does not have any additional questions on this topic, I can move to other issues. Yeah, let's talk about void for vagueness. Yes, Your Honor. This statute fails to provide sufficient notice to, without more explanation, to defendants of what conduct is expected of them while driving. The language itself is failing to devote full time and attention. It is, as the Oklahoma State Courts have held, it doesn't apply any fixed standard, and it requires more information in order to determine that this person's conduct was actually violative. So let me, I want to focus you for a minute. There's two predicates under which you could be convicted, and here the jury convicted under both. When you're arguing your void for vagueness, are we talking about committing a criminal act, or are we on the second predicate where it's a lawful act but done grossly negligently? Yes. The void for vagueness challenge is only as to the state court statute that requires drivers to devote full time and attention to driving. So it would be lawful, but grossly negligent. I'm sorry. Oh, OK. You're saying you are on predicate one. I'm on predicate one, yes. And then arguments three and four relate to predicate number two. So it is somewhat unclear exactly what conduct, as a result of the vagueness of the statute, it becomes somewhat unclear what the jury actually convicted Mr. Hadley of. The government in its brief suggests that the error here was just simple failure to  But that requires, under the case law, knowledge of circumstances that would make it, that would make failing to brake negligent. Like he must be actually aware that the car in front of him- Well, actually it's to be grossly negligent. Grossly negligent. Yes, excuse me. Grossly negligent. Thank you for the correction. That he had to have been actually aware of the circumstance that this car in front of him was slowing to a near stop on a road with a 65 mile an hour speed limit, apparently in preparation for engaging in illegal traffic maneuver. If he was unaware that the car was slowing, it would not be grossly negligent to fail to brake. There was no stoplight. There was no traffic signal. And combined that with the lack of fixed standards in the state statute for failing to devote full time and attention to driving, as applied to these circumstances, makes it very unclear what Mr. Hadley was convicted of. Now there are circumstances under which I think this failing to devote full time and attention to driving statute might not be insufficiently, might not be void for vagueness. We've only raised the as applied challenge. For example, if somebody was texting, was doing a non-driving activity, that might be a circumstance in which as applied to that person, the statute isn't vague. But there is no allegation that Mr. Hadley was engaged in any conduct that is not really a constituent act of driving. He was looking around, observing obstacles in the road, off to the side of the road, and unfortunately rear-ended this car that was engaged in an illegal traffic maneuver. Counsel, the brief cites Reed, which tells us that this is essentially an as applied challenge, but Reed also instructs that it's very fact intensive. Why didn't the government's bill of particulars on this count sort of satisfy the universe of facts that were needed here for us to look at that, and then the trial evidence to be satisfied that this, as it was applied to Mr. Hadley, there are enough universe of facts to satisfy the vagueness standard? Well, the government's bill of particulars really only describes what happened. That they were, you know, he was driving down the road, there was a car in front of him, the car slowed to a near stop, he failed to apply his brakes. None of those facts are really in dispute. What is in dispute, or what the court concerned that the jury was being asked to vote on, is what he did that constituted failing to devote full time and attention to driving. In addition to, you know, what unlawful manner he committed this lawful act in. And the government's brief, even on appeal, just does not make that clear at all. I think the argument is that he didn't, that based on the bill of particulars, that the car that was, I think, going two miles an hour, was, could be seen for eight seconds, and he didn't start applying his brake until one second before the collision. And so it essentially is an improper lookout argument. Well, Judge McHugh, the language of the statute is failing to devote full time and attention to driving. No one is disputing that he did not notice that this car had stopped in the middle of the roadway. Now, for gross negligence, as this court has explained in Benally, it would require that the government show that Mr. Hatley was actually aware, not just that the car could be seen, nobody disputes that the car could be seen, but that he actually saw it, that he actually noticed, not just that he saw the car, but that he was aware of the circumstance that the car was slowing to a near stop such that application of the brake was necessary and  if he failed... Well, is it your position that if he had been gazing out the window for 20 minutes and not looking at the road because he didn't know before he plowed into another car, that that's not a violation? No, Your Honor. I think gazing out the window for 20 minutes... So, he doesn't have to be actually aware he's about to plow into another car. He has to be actually aware that the actions that he's taking, i.e., not looking at the road, would bring to his attention the risk of causing a serious injury. I think that when somebody's staring out the road for 20 minutes, we would concede that that person is aware that they are going to hit something, very likely. I think that looking out the window for six to seven seconds, that's kind of the outside limit of what could have been established, but that actually was not something the government proved at trial. It was not something that Mr. Hadley admitted what he said was. He was driving down the road. I didn't notice brake lights until I put my eyes back on the road after glancing off to the side of the road. And so, certainly, one could speculate that the reason he didn't see it is because he was looking at the car for longer than he thought. That wasn't something that the government proved at trial. It's also, in the world of speculation, it's also possible that he simply failed to notice that the brake lights were illuminated and didn't notice until he looked away and then looked back and then saw them for the first time. It's not, you know, as we've discussed, it's not a place that one would traditionally brake. And I see I'm running short on time. May I reserve the rest of my time for a bottle? Yes, you may. Thank you. May I proceed? Yes, sir. May it please the Court, my name is Benjamin Traster and I represent the United States. The defendant contests the admissibility of the verification letter that was introduced at trial and the government concedes that Harper controls the introduction as hearsay of the verification letter. However, as the Court was asking during counsel's argument, there was other evidence of the defendant's Indian status. And I would also note that it is important that there was also evidence both of defendant's Indian status at the time of the offense and defendant's Indian status at the time of the trial. That's important and the way that that comes out is based on the timing of the interim tribal registrar's testimony. And I also want to come to it at... Well, if we agree that the tribal registrar's testimony has the same deficiencies as the verification letter, is there other evidence that goes to his tribal status as of the time of the offense? As of the time of the offense, the only evidence that I can point to, Judge McHugh, is actually with respect to your question, which is you have a defendant like Mr. Hatley who files a motion to dismiss in state court two weeks after the McGirt decision on July 17th, 2020, in essence saying McGirt applies to me and this court should not be in state, this case should not be in state court. And I think that as Judge McHugh, as you pointed out, that could be conceived circumstantially as an admission that he was an Indian at the time of the offense. I'm sorry? I was going to say, but how? As your opposing counsel pointed out, the jury doesn't know any of that. So if the jury has to make a reasonable inference from the evidence, how would they know what the legal consequences are of that statement just saying, I'm a member of the Cherokee Nation? Well, I think that that's correct in part, but I do think when the questions came out when the exhibit was introduced, Exhibit 51, and the questions came out, the exhibit was tied to, it was clearly related to the state case and it was tied to the state case. It talks about that the defendant was an Indian, a member of the Cherokee Nation. It talks about that it happened on the Chickasaw Reservation. It happened at the location where the accident occurred. So I think there are ways that that motion to dismiss in the state case can tie back to the time of the offense. Well, the motion to dismiss says, I am a member. It doesn't say when he became a member. And the more difficult thing for me is that the district court gave a specific instruction that said, Indian tribal document certification that Mr. Hadley had some degree of Indian blood and that he is enrolled in tribal member is sufficient to show both that he has some degree of Indian blood and that he is recognized as an Indian by the tribe. The court gave an instruction, here's what you need to do to prove Indian status and oh, by the way, the verification letter checks both of those boxes. I mean, I think that's a big problem in terms of us deciding it was harmless. Well, I would note that that instruction, first of all, was asked for by the defense as well as the government. That was an invited jury instruction. It was proposed in volume one, page 388, 387 of 388. You can actually see the jury instruction that the defendant requested. And what it requests is this present tense recognition of defendant's Indian status, that he is an Indian, he is recognized as an Indian, and here are the ways that one can show his Indian status. I do think that's important with respect to We join the other cases that have decided it and we hold that in order for you to meet your burden to prove this element of the offense, you have to show Indian status at the time of the offense. I'm not sure that the defendant can waive your obligation to prove an element of the crime. Well, I think that there is a question. So there's a number of problems here and one of them is that the defendant didn't argue this in defendant's opening brief. What defendant did was simply assumed based on a jury instruction in Wood 2 that the jury instruction was at the time of the offense defendant's Indian status. But the instruction proposed by the defendant and then provided by the court was the present tense instruction. So this wasn't argued. Defendant actually goes and eventually argues in the reply brief that even if it wasn't argued, it was plain error. But that wasn't developed and it was essentially waived in the opening brief. I want to go back and also just point out that the way that the testimony came out, the way that Derek Vann, the Interim Tribal Registrar, testified, there was no objection to his testimony at any point. There was no objection on the basis of hearsay. Well, the objection was foundation when he started testifying about Indian status, meaning you personally don't have any knowledge. That's the proper objection there, is foundation. And I think that as the Interim Tribal Registrar, and even in the Harper case, there's a distinction in the Harper case that the custodian in the Harper case, Tabitha Oaks, testified generally about her knowledge of the records with the Choctaw Nation. She testified about CDIB cards. She didn't testify that she knew anything about the defendant in that case. Neither did Mr. Vann. And when he was asked, you know, can you tell us, he said no, and I have to look at the verification letter. I think it's this, but I don't know without looking at the letter. There was no evidence that he even knew the defendant. So I would point, Your Honor, to his testimony, I think on page 222 or 223 of Volume 3, where one of the things that he does is he actually points out the lineage of the Indian. And the reason why that is crucially important is because that goes beyond the four corners of the verification letter. He had information and he knew. And again, Judge Federico in the Harper case pointed out that Terry Stevens, the director of the Choctaw membership agency, he did not testify. That was noted twice in that opinion. Tabitha Oaks didn't have specific knowledge of membership. She just was a custodian of the records, and the business record wasn't an actual business record in that case. Everything Derek Vann testified to, the enrollment date, the foundation for his knowledge, that he's the interim tribal registrar, all came before the introduction of the verification letter. If that verification letter was never introduced, the defendant couldn't be making this objection today. It was introduced at the end of his testimony as, in effect, essentially the last thing that was introduced with respect to his testimony. And it was only then that the objection came out that it was hearsay. Well, he objected foundation, Mr. Vann's testimony, because he lacked personal knowledge. And then when you actually offered the exhibit, it was hearsay and foundation. That's correct. And I don't see any problem with the objections that he made. And, you know, I'm looking at the testimony. It says, are you aware from your records and in your capacity as the custodian of records, how Mr. Hatley traced his lineage? No. But he did submit all the required documents to become a tribal member. He doesn't have personal knowledge. I actually think that that answer is equivocal. He says no, but he does go on to say that he provided all the records, and then goes on to say that even his, again, his lineage is through his paternal grandmother, who was the original Dawes enrollee. So he clearly does have knowledge. And, again, that's not coming from a verification letter. I think that there's an important question that is being asked about the basis for his knowledge, the basis for any witness's knowledge. And that's why the government cited to the Powers case to talk about, essentially, after acquired knowledge. Well, if we disagree with you, do we have to reverse and remand for new trial? I'm not sure. I think the court would have to essentially agree that the defendant didn't have to object to the jury instructions, could propose the jury instructions arguing that the defendant is an Indian, then essentially overlook the other evidence, including defendant's own admission that he is a member of the Cherokee Nation. So I think that there's just a lot of steps that the court would have to find, some steps that weren't, again, weren't even briefed. But he can agree he is an Indian without saying anything about his status at the time of the problem here. I agree. But I think that the question as to what the timing is for Indian status, the time of the offense, or the – and I think that there's good reasons. Well, is the jury instruction plainly erroneous because it doesn't include a temporal factor? Certainly not. And I think the reason why it's not is the jury instruction is a verbatim quote of this Court's decisions in Scrivner, Prentiss 2, Wood 2, even the Harper decision. And counsel points to the Drury decision in the Tenth Circuit, but I would note that one of the factors in the Drury decision about the defendant's Indian status in that case is that – and I'm sorry, I may have that wrong about the defendant's Indian status or a witness – or a victim's Indian status. But in fact, I believe it was the victim's Indian status children were taken into custody by the tribe after the offense. So again, counsel cites the Drury decision to say it has to be at the time of the offense, but the actual facts of that case even support the fact – and I concede that it is a small fact, but the facts of the Drury case also point out that those children who were taken into custody were taken into custody after the offense. It's the recognition by a quasi-sovereign status that once you have that recognition, that the state can't come in and then pluck you back and say, we're going to prosecute you. But counsel, on the timing aspect, I read your brief to say the government does not have to prove status at the time of the offense. And a moment ago, in response to Judge McHugh when she said that the timing matters, you said, I agree. So is the government's position that you don't have to prove it at the time of the offense or that you do? Well, I would – I'm not trying to avoid that question, but I would say that I think that there should certainly be more full briefing on that particular question. Well, but they – I mean, they raised it, and I think it's a preserved issue on appeal. You responded to it in your response brief. And I also kind of read your argument to be what I'll call reasonable inferences that the jury could make. And I'm looking at that as you've heard us talk about both for your direct evidence to prove the element but also in a harmless error analysis. Could the jury have taken reasonable inferences to conclude Mr. Hatley was a member of the tribe with Indian blood meeting the status requirement at the time of the offense? So I'm just trying to figure out if you're arguing both, it wasn't a legal requirement to prove it at the time of the offense, or regardless, when you look at the realm of evidence, we did prove it by reasonable inferences. I would argue both. And I would argue that – I still would argue that Mr. Vann's testimony where he actually testifies without objection as to the enrollment date is good testimony. It was simply without objection. Well, he objected as to foundation. How can you say it was without objection? Well, I – He objected to all of Mr. Vann's testimony as saying it lacks foundation because you have no personal knowledge of when he became a member of the tribe. He did object to the lack of foundation, but I think by that point – the point that I would make is that I think by that point the Court had enough at that time to rule that he did lay a foundation as the interim tribal registrar and the custodian of those records. Again, I go back to the fact that it's a question of how does one gain personal knowledge. And I think that he, as the interim tribal registrar, who can look at the documents and the records, can gain that, just as empowers, can gain that after-the-fact knowledge in the same way that the lay lenders in powers could gain after-the-fact knowledge. But I want to go back just to Judge Federico's question, that we are arguing both. And I would direct the Court to the Antelope decision, what the Antelope decision does is it talks about the tribe as a quasi-sovereign status. And again, the fact is that the Zepeda decision, which the defendant points out in their reply brief, one of the interesting points of the Zepeda decision is it talks about this astute from a tribe and therefore gain the venue of their court. Well, in fact, what we have is an astute defendant in this case who is attempting to do the same thing, going and saying, I'm an Indian, you state can't prosecute me, and now coming out and saying, oh, but wait a minute, I'm an Indian, and you can't prosecute me, state, but at the same time, I'm going to claim this quasi-sovereign status, and the federal government can't prosecute me either, because- Ask him when he became a member of the tribe. I agree. Right, I mean, so it's not like he's some clever mastermind, you know. I just don't think that the government understood or even today believes that had an obligation to prove his status as of the time of the offense. Well, I would only suggest to the Court that I think that that should have been developed at the trial. It should have been developed more fully in the opening brief. Even on plain error, it was only argued in the reply brief. The jury instructions followed the case law verbatim as to what it says, and instructed the jury verbatim about Indian status, is an Indian, is recognized as an Indian. The only place the defendant got the- and again, even the defendant proposed that jury instruction. It's not like Simpkins, where an element was left out and the government may have proved it. It's more like a case that we didn't cite in our brief, but more like the Shamo case, and I apologize, I don't have a citation. But can the defendant waive a necessary element of a crime? So let's say we decide that you do have to show as of the time of the offense. Does the defendant have any right to waive the government's obligation to prove beyond a reasonable doubt an element of the crime? Well, what I would suggest to the Court, and I see my time is going to expire, so I just ask permission to answer the question. What I would suggest to the Court is that if it was argued on plain error, the government would have had an opportunity to respond and say that there is no consensus among the courts. There's only the Ninth Circuit that's paid a decision, and there simply is no consensus among the courts about whether it is the time of the offense or whether or not it's at the time of the trial. And I think that that's important, because without that development of the law, then because the jury instruction was presented to the court the way that it was, and because the jury instruction followed Tenth Circuit case law exactly as it's written, that I think that the government did prove that element, and the defendant doesn't have to waive that element. Thank you. Thank you. Thank you.  Just briefly, to respond, the government says that the knowledge about the defendant's lineage did not come from the letter, and we don't argue that it does. It appears to have come from the tribal records, but as Judge McHugh pointed out, knowledge of the contents of a record that is not in court does not constitute personal knowledge. That is a violation of Rule 602, and it is inconsistent with the litany of cases that we cited in our opening briefs, where essentially every federal court to ever examine the issue has said that testimony about a record, absent the presence of the record in the courtroom, is insufficient. It's hearsay. With respect to the issue of whether we waived this, we clearly argued in our opening brief that the government failed to introduce evidence at the time of the offense. When the government came back and said, we don't have to prove that, we further developed the issue in their reply. There was no waiver of this issue. How about the invited heir issue? Yes. With respect to the invited heir issue, I see my time has elapsed. May I answer? Please do. This court has recently held in Simpkins that bad jury instructions, and we concede that this was a bad jury instruction, and we concede that... But you do concede that you asked for it. That was also the case in Simpkins. Yeah, I understand that, but I'm just trying to get the facts in your case. Yes, we did propose the bad jury instruction, but as in Simpkins, the fact that the defendant made the same mistake that the government made in formulating the jury instructions does not relieve the government of obligation to prove by competent evidence all elements of the offense, regardless of what the jury instructions say. Thank you. Thank you. We'll take this matter under advisement.